FRANCISCO SEMIDEY, Plaintiff and Appellant, *v.* HEIRS OF
   EDUARDO SALICHS, RAMÓN LLINÁS and JOSEFINA MONTA-
   NES, Defendants and Appellees.

No. 3348. Argued January 13, 1925.—Decided March 31, 1925.

1. SURVEY—CERTIFICATE OF SURVEY—ADJOINING OWNERS—EVIDENCE.—A certifi-
   cate of survey signed by a public surveyor on October 28, 1886, or more
   than 30 years before the trial, stating that the adjoining owners were present
   and agreed to the survey, and also the plan accompanying the certificate are
   admissible in evidence to establish possession, although the certificate of sur-
   vey is not signed by the adjoining owners.
2. ID.—ID.—ID.—ID.—A plan made by a surveyor without summoning the ad-
   joining owners and based exclusively on statements of witnesses whose source
   of knowledge was not shown is not sufficient to prove title in the plaintiff
   in an action of revendication.
3. AREA OF PROPERTY—SEGREGATION—EXCESS OF AREA.—An excess of 9 acres in
   the area of a property which, according to the original title deed, is 200
   acres is not unreasonable, especially when the segregation from the main
   property was made by designating only the place and class of the land to
   be sold at auction.

District Court of Guayama, Gabriel Castejón, J.   Judgment for the
   defendant in an action of revendication.   *Affirmed.*
*Manuel A. Rivera* for the appellant.   *José Tous Soto* for the ap-
   pellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This action was brought by the plaintiff to recover a
certain piece of land with mesne profits.   The properties
of the parties adjoin and the plaintiff alleges as a cause of
action that the defendants removed a fence which marked
the western boundary of the defendants' property, changed
the dividing line between the two properties and unlawfully
appropriated a strip of land of 48.69 acres.

In 1884 the two properties formed a single property
and belonged to Teresa Semidey, the wife of Roque Geor-
getti.   The owner failed to pay the taxes for that year and
the municipality of Salinas brought two proceedings for
their collection, segregating from the main property 75 and
125 acres, respectively, which were sold by public auction
to Carlos Buitrago and finally became a single property of
200 acres.

The principal property continued to be called the Teresa property and the 200 acres segregated passed later to Vicente Atilano and from him finally to the defendants; therefore, for the sake of brevity, it will be referred to hereafter in this opinion as the Salichs property.

This property was segregated from the eastern side of the Teresa property and on October 18, 1886, the dividing line between the two properties was plotted by public surveyor Eugenio Escobar. The survey was made in the presence of Vicente Atilano, then owner of the Salichs property; Roque Georgetti, the husband of Teresa Semidey who owned the Teresa property and was trustee of the Salichs property in the tax proceedings; Jesús Abalo, and Juan Tomás Rovira.

As a result of the survey a plan was drawn and a certificate of survey was made reading as follows:

"*Certificate of survey:*—(To the above described plan is attached the following handwritten document drawn on Spanish official paper:) Stamp 12. Years 1886 and 1887.—20 cents.—N. 0.001.294.— Certificate of survey of the western side of a property of Vicente Atilano adjoining the property of Semidey-Georgetti, situated in the place called Rosada, ward of Aguirre, Salinas.—On October 26, 1886, I, Eugenio Escobar y García-Amador, public surveyor in this Island of Porto Rico, at the place called La Rosada, ward of Aguirre, municipality of Salinas, proceeded to survey the western side of a property of Vicente Atilano, acquired at a judicial sale made in the city hall of Salinas, and bounded as follows: On the North by property of the heirs of Antonetti; on the East by property of Tomás Benvenuti, from which it is separated by the road called Las Mareas, and on the South and West by lands of the heirs of Pascual Semidey.—There were present Vicente Atilano, Roque Georgetti, Jesús Abalo and Juan Tomás Rivera.—In their presence I proceeded to make the survey in the following manner: I took as a starting point the vertex formed by the hedge which bounds the property of the heirs of Antonetti and the property of Semidey-Georgetti, situated to the North of the land belonging to Vicente Atilano; from this point West 10° North for 64 yards or 54.50 meters to a *tachuelo* stump near a tamarind tree; from this point

South 4° West for 1410 meters to a *tachuelo* stump on the western boundary of the said property, which forms the vertex of the southern and western sides.—The survey having been finished without any objection or claim, I issue the present certificate signed by me and those present who know how to sign.—(Signed) Eugenio Escobar.''

Thereafter the principal lines, courses and distances of Escobar's survey were verified by engineers José A. Zambrana, Eduardo Salichs and Blas Silva, the first two laying out on the ground Escobar's plan and the last verifying the distances, courses and lines on the ground. Surveyor Escobar had made also a general plan of the Salichs property on July 28, 1886, the importance of which consists in that the starting point situated on the north side of Atilano's property, which now belongs to Salichs, the vertex of the Antonetti property, which now belongs to Manuel González and is called the Jagua property, and the distance toward the west to a *tachuelo* stump near a tamarind tree (point of reference), coincide exactly with those marked in the plan of the survey, there being formed on that side in both plans a strip running into the Teresa plantation for a distance of 64 acres, equivalent to 54.50 meters, measuring from the starting point to the *tachuelo* stump near the said point of reference.

[1] The appellant objected to the admission in evidence of the plan of October 18, 1886, and the certificate of survey of the same date, and this is the question raised in his brief under the second assignment. The objections refer principally to the certificate of survey. It appears, however, that it was signed by a public surveyor; that it was made on October 28, 1886, or more than thirty years before, and that the owners of the adjoining properties were present and made no objection or claim. All of these are circumstances that made the document admissible as well as the plan, for the latter is only a graphic description of what is contained in the certificate of survey.

The appellant insists, however, that the certificate is not signed by the adjoining owners, although it is stated that they were present and agreed to the survey, and that the date on which it was issued was not made to appear. The document is dated. It is not a copy, but the original document written by the surveyor and signed only by him, who at that time was a public official and could attest to his surveys without the intervention of a notary, unless required by the owners of the adjoining properties or of the property surveyed.

In volume 1 of Alcubilla's *Diccionario de Administración*, page 245, under the heading Surveyor, Surveying, the following appears:

"4th.—That the report of a surveyor as to the area of whatever land he may have surveyed shall be signed only by him, and it is not necessary that the same be executed before a notary in order that it may serve as proof in court, except at the instance and at the expense of any or all of the parties."

[2] On the other hand, the appellant assigned as the first error the refusal of the court to admit the plan and certificate of survey signed by Ramón García Saenz and offered in evidence by the appellant.

This is a general plan made in 1889 of the Teresa property of an area of 311 acres, and the objection of the appellee, as well as the ruling of the court, was based on the failure to state in the certificate of survey that the adjoining owners were present at the survey. However, we think that the assignment is without importance, for notwithstanding its ruling the court in its opinion analyzed and weighed the probative force of these documents, to which, we think, is due the fact that thereafter it admitted in evidence a plan offered by the appellant made by engineer Sergio Cuebas, which is a reproduction of the plan of García Saenz as shown by the following note therein contained:

"Copy of the plan of the property of the Semidey brothers made

by Ramón García Saenz in 1889, indicating the land in controversy. S. Cuebas, civil engineer. Guayama, Oct. 5, 1922. Scale 1/5000.''

And this is the material evidence relied on by the plaintiff, but it really has no probative value. Neither by the conditions under which that evidence originated nor by the consequences that might be derived from it can it have any weight to support the plaintiff's claim. The plan of García Saenz is of a later date than the two plans of Escobar. The owners of the adjoining properties were present at and acquiesced in Escobar's survey, while from García's certificate a matter of such importance does not appear, for although witness Porrata testified that he assisted García Saenz in making the survey, yet he added that Atilano, then the owner of the Salichs property, was not present at the survey, but came after it had been finished. As far as results are concerned, in the plan of García Saenz the boundary line is marked as starting from the Guayama road, following the boundary line of the Teresa and Jagua (Manuel González) properties and thence in a straight line to the sea. The starting point on the north is the vertex of the Jagua property, thence south to an ordinary stake at a point designated arbitrarily by a witness. The dividing line is not marked by a wall or a stream constituting a continuous boundary, but by isolated points marked by stakes, and such discontinuous boundaries, because of their uncertainty, are often the cause of disagreements between owners of adjoining properties. If this is the case, these disagreements are adjusted by compromises between the owners, or else it would be necessary to verify the boundary line according to the area of the adjoining properties and the title deeds. In the case of *Matienzo* v. *Cancio,* 23 P.R.R. 250, this court said:

''The plan of a surveyor made without summoning the adjacent owners and based exclusively on statements of witnesses whose source

of knowledge was not shown, is not sufficient to prove title in the plaintiff in an action of ejectment.''

[3] In this case, however, the plaintiff has made no showing that the area of his property has decreased in proportion to the land claimed. It is true that there is an excess according to the plan of Salichs verified by Zambrana's plan. In the former the property is given an area of 208.54 acres and in the latter of 209 acres. But such a small difference can not be considered unreasonable in a property of 200 acres. Experience shows, notwithstanding the modern methods of surveying, that ordinarily surveys are not mathematically accurate. The instruments are sometimes faulty and allowance must be made for personal mistakes. Besides, in the case of *Beiró* v. *Rovira Brothers,* 26 P.R.R. 747, it was held:

''The mere fact that the sum total of all the acreage owned in separate tracts by a defendant exceeds by a few acres the total amount called for by his title papers, while the total area of the different properties owned by a plaintiff happens to be somewhat less than appears from the face of his title deed, can hardly justify the taking from said defendant of so much of such excess as may be required to make good, in the aggregate, the shortage of the plaintiff.''

In connection with these differences it is to be observed that the unit taken as a basis in Escobar's plan is the ancient *cuerda,* while the equivalent of the modern *cuerda* is given by engineers Zambrana and Salichs. This is so because at the time of the judicial sale of the Salichs property the Royal Decree of August 7, 1883, was in force, according to which a *cuerda* was 4,074.48 square meters, while now a *cuerda* is 3,930.40 square meters. If the area of the property is based on the old unit of measurement, it would contain 200 *cuerdas,* and if given according to the modern unit, the number of *cuerdas* must be greater in proportion to the lesser area of the modern *cuerda.* But in any event, any excess that might result, even when employing the old

unit, would be of no importance in this case, inasmuch as in one of the tax proceedings it appears that the segregation was made more or less *grosso modo,* designating only the place and class of the land to be sold.

Another unreasonable result which follows necessarily from the line drawn in the plan of García Saenz as the boundary between the two properties, which is a straight line running from the Guayama road to the sea, would be that the Salichs property would be reduced to three-fourths of its original area because the strip which runs into the Teresa property and forms a part of the northern side of the Salichs plantation would no longer be part of the latter although its area according to the original title deed is 200 acres. The area of this property, therefore, would be 48.69 acres less, and that is the parcel sought to be recovered.

It does not seem necessary to give further consideration to the appellant's allegation that he leased the Teresa property to the Central Aguirre in 1901 for twenty years, it having a fence marking its boundary with the Salichs property according to the plans of García and Cuebas, and that the said fence was removed during the term of the lease, the defendants thus invading his land. In the first place, there was evidence showing that the lessee sub-leased the Teresa property to third persons, and witness Noyes, one of the sub-lessees, while on the stand, denied that averment. In the second place, it does not seem reasonable that the lessee or sub-lessees should patiently suffer the commission of an act which prejudiced them because of the decrease in the area of the land which they cultivated, considering that the property was used for the cultivation of sugar cane, and a strip of land like the one claimed, being flat land good for such cultivation, does not seem negligible.

The evidence, in conclusion, has shown that at the survey made by engineer Eduardo Salichs Pedro Juan Semidey, who was the plaintiff's agent in charge of the Teresa

property, was present and agreed to the survey, and also a fact of undeniable importance is that there still exist the trunks of very old trees which mark the boundary line as drawn by Escobar. Although only the trunks remain, because the branches were cut off probably for the benefit of the cultivation of sugar cane, yet as some of these trees are fifty years old, as stated by some witnesses, and they still survive, their mute testimony of unquestionable significance may have convinced the trial judge better than anything else, especially as he inspected the lands. The court below, therefore, meted out full justice to the parties by dismissing the complaint and its judgment must be affirmed.